Dear Mr. Petitjean:
You have requested an opinion of the Attorney General concerning the authority of a municipality to pay for flu shots for its employees. You state that because of constant contact with the general public in performing daily duties and in an effort to prevent the spread of flu among fellow employees and citizens alike, the Administration of the City of Rayne would like to pay for flu shots for all of its interested employees. The Administration hopes that this preventative measure will in return alleviate lost work time for those employees that elect to be vaccinated.
This opinion request involves an expenditure of public funds. As such, your question will be examined in light of Article VII, § 14 of the Louisiana Constitution of 1974. La.Const. art. VII, § 14 seeks to prevent the gratuitous alienation of public funds and property and provides, in pertinent part, as follows:
 Section 14(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . . .
In Board of Directors of the Industrial Development Board of theCity of Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners,Citizens of the City of Gonzales, et al., 2005-2298 (La. 9/6/06),938 So.2d 11 (the "Cabela's" case), the Louisiana Supreme Court abandoned its prior analysis, which was set forth in City of PortAllen v. Louisiana Mun. Risk Mgmt. Agency, Inc.,439 So.2d 399 (La. 1983), and articulated a new standard of review governing La.Const. art. VII, § 14(A). The new standard provides that La.Const. art. VII, § 14(A) "is violated when public funds or property are gratuitously alienated." Cabela's,938 So.2d at 20. *Page 2 
In light of the Cabela's case, it is the opinion of this office that in order for an expenditure or transfer of public funds to be permissible under Art. VII, § 14(A), the public entity must have the legal authority to make the expenditure and must show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds. The Cabela's
standard places a strong emphasis on the reciprocal obligations between the parties to ensure that there is not a gratuitous donation of public funds.
This office has previously opined that certain wellness and fitness programs are constitutionally permissible. See La. Atty. Gen. Op. Nos. 89-112, 95-122, 98-385, and 99-68. While these opinions were rendered prior to the new standard articulated by the Supreme Court in the Cabela's case, we believe that these opinions are still persuasive to the extent that they do not contradict the Cabela's standard. Therefore, a summary of these opinions will be helpful in the analysis and resolution of your inquiry.
La. Atty. Gen. Op. 89-112 addressed the implementation by the Caddo Parish Sheriff's Office of an incentive pay plan which provided additional compensation to employees for use on firearms proficiency, vehicle safety, continuing education and physical fitness. This office concluded that the pay plan was constitutional, specifically, finding that:
 The Caddo Sheriff's incentive plan is justified by a rational relation to a public purpose and benefit. . . . The higher standards of firearm proficiency and safety, vehicle safety, college academic work relating to law enforcement, and greater physical fitness, promote the protection of the lives of the deputies and the public they serve, potentiate the investigative and enforcement skills of the deputies, and save the taxpayer money in decreased incidence of vehicle accidents and lower costs due to the improved health and job performance of the deputies. Most importantly, the incentive program tends to project these higher standards of professionalism into the future as the regular and expected performance, as more and more deputies participate to enjoy the incentive benefits. The modest amount of public funds used to induce this higher professionalism is proportionate and constitutionally sanctioned.
This office went on to opine that the public benefit realized was not disproportionate to the value of the public property alienated. *Page 3 
La. Atty. Gen. Op. 95-122 provided that the chief of police for the city of Abbeville could use public funds appropriated from the Abbeville Police Bond Fee Account to pay for health club membership fees for its employees. This office opined that the payment of such fees for the promotion of physical fitness constituted a law enforcement purpose as required for use of monies from the Abbeville Police Bond Fee Account, and the physical fitness program met the constitutional standards of Article VII, § 14.
La. Atty. Gen. Op. 98-385 provided that the Lake Charles Harbor and Terminal District, ("District") a political subdivision of the state, was authorized to spend public funds for the payment of monthly dues on behalf of employees that participated in a structured fitness program developed by a local hospital. Noting the importance of having a vast spectrum of employees who are both mentally and physically capable of meeting the challenges demanded by their employment, the District contracted with Lake Memorial Hospital to establish an Employee Assistance Program ("EAP"). An integral component of the EAP was the implementation of a wellness and fitness program. This office opined that the implementation of a wellness and fitness program constituted a public purpose. The benefits of the program would include reduced absenteeism and healthcare costs, and increased work productivity. This office also concluded that the benefits received by the District were deemed reasonably proportionate to the amount expended for the wellness and fitness program.
Finally, La. Atty. Gen. Op. 99-68 discussed the conditions necessary for the implementation of a publicly funded wellness and fitness program developed by the Vermillion Parish Clerk of Court. Finding that the program constituted a public purpose resulting in bona fide benefits, this office found that the Vermillion Parish Clerk of Court may establish a wellness and fitness program for his employees and pay the membership fees out of the clerk's salary fund. This office went on to opine that the value of the benefits received was reasonably proportionate to the cost represented by the membership dues.
The opinions cited above involved expenditures and/or programs that were found constitutionally permissible despite the absence of statutory language specifically authorizing the programs in questions.
While there is no specific statutory provision that would authorize a municipality to create a wellness program that would consist of paying for flu shots for interested employees, we believe that such a wellness program would be constitutionally permissible. It constitutes a valid public purpose under Article VII, § 14, as the Centers for Disease Control and Prevention ("CDC") advises that annual influenza vaccination is the most effective method for preventing influenza *Page 4 
virus infection and its complications.[1] Most studies find that influenza vaccination reduces or minimizes health care, societal, and individual costs and the productivity losses and absenteeism associated with influenza illness.[2] Moreover, the Advisory Council on Immunization Practices recommends that persons who provide essential community services should be considered for vaccination to minimize disruption of essential activities during influenza outbreaks.[3]
A wellness program, consisting of providing flu vaccinations to interested employees, will likely result in many public benefits; thus, the expenditure does not appear to be gratuitous in nature. The public benefits may include: alleviating lost work time and reducing absenteeism and healthcare costs. The public also may benefit from minimal disruptions to essential community services and activities that can be adversely affected if there is an influenza outbreak among employees of the municipality.
Finally, it appears that the municipality has a reasonable expectation of receiving a benefit equivalent to the amount expended on payment of flu shots for its employees. Therefore, we believe the proposed transaction would be constitutionally permissible.
Employee participation in the proposed wellness program should be purely elective, and the municipality should not require or coerce employees to receive the flu shot. Further, employees should consult with a medical professional before electing to be vaccinated.
We hope that this information sufficiently answers your inquiry. If we can be of further assistance, please do not hesitate to contact us.
With Best Regards,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
By: __________________________ Angelique Duhon Freel Assistant Attorney General
JDC:ADF
[1] Anthony E. Fiore, MD, et al., Prevention and Control ofSeasonal Influenza with Vaccines, Recommendations of the AdvisoryCommittee on Immunization Practices, CDC MMWR 58 (Early Release); 1-52 (July 24, 2009), http://www.cdc.gov/mmwr/preview/mmwrhtml/rr58e0724al.htm.
[2] Id. at § Cost-Effectiveness of Influenza Vaccination.
[3] Id. at § General Population.